Present:  Kinser, C.J., Hassell, Lemons, Goodwyn, and Millette,
JJ., and Lacy and Koontz, S.JJ.[1]

COMMONWEALTH OF VIRGINIA

                                           OPINION BY
v.  Record No. 092561          JUSTICE LEROY F. MILLETTE, JR.
                                         April 21, 2011
COREY TAYVON SMITH

            FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we address whether a frisk of a passenger

conducted during a valid traffic stop was supported by

reasonable suspicion based upon an alert by a police computer

system that the passenger was "probably armed and a narcotics

seller/user."

                          BACKGROUND

     Corey Tayvon Smith was a passenger in a vehicle stopped on

September 18, 2007 by Richmond police officers, Robert Hedman

and Steven Moore, for a broken rear brake light.  The officers

asked the driver and Smith for their identification and

processed that information using the Richmond police database

known as PISTOL (Police Information System Totally On Line),

which was accessed through a computer in the police patrol car.

The PISTOL database returned an "alert" stating that Smith was

"probably armed and a narcotics seller/user."  Upon receiving

_____

     [1] Former Chief Justice Hassell presided and participated in
the hearing and decision of this case before his death on
February 9, 2011; Justice Koontz participated in the hearing and
decision of this case prior to the effective date of his
retirement on February 1, 2011; Justice Kinser was sworn in as
Chief Justice on February 1, 2011.

the PISTOL alert, Officer Moore asked Smith to "step out" of the vehicle and Smith complied. Smith denied having any weapons or drugs on his person in response to Officer Moore's inquiry. Officer Moore stated that he was going to pat Smith down to make sure he did not have any weapons. Smith replied to Officer Moore, "[Y]ou're not going to search me." During the pat down, Officer Moore felt a gun in Smith's front left pocket. Officer Moore retrieved a .38 caliber "two-shot Derringer" from Smith's pocket.

Smith was arrested and charged with possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. Prior to trial, Smith filed a motion to suppress the evidence obtained as a result of the pat down arguing that the search, based solely on the information obtained from the PISTOL database, was unreasonable and in violation of the Fourth Amendment to the United States Constitution. During the suppression hearing, Detective Timothy Neville testified that he obtained a warrant on October 18, 2006 – eleven months before the incident at issue in this case – for Smith's arrest for possession of a firearm by a convicted felon. Detective Neville further testified that Officer Roger Harris arrested Smith on the warrant and placed the arrest information in the PISTOL system. Detective Neville stated that this information would have caused the alert "probably armed" to be put into the PISTOL system.

2

Smith argued that for a frisk to be lawful, it must be based upon reasonable suspicion of present criminal activity. Smith continued:

> If this were to be allowed, basically anybody that's been convicted of a firearm offense within maybe a certain period of time, can be patted down with absolutely no other indication of suspicion for any other criminal activity any time the police come into contact with them. And I would suggest to the Court that that has to be clearly wrong.

In response, the Commonwealth argued that because PISTOL is the police's own system, "there is inherent[] [re]liability [and] that [the police] should be able to rely on [PISTOL alerts] when they are out in the field doing their work." The Commonwealth further asserted the police should be permitted to use PISTOL alerts not only for determining whether criminal activity is afoot, but in order to protect themselves.

After hearing argument from counsel and taking the motion under advisement, the trial court denied Smith's motion to suppress, stating:

> The Court believes that under the circumstances of the search, the stop being appropriate, and there not being any challenge to the stop, and the officer receiving information with regards to the fact that the person had been known to carry firearms, did not act impermissibly in conducting a pat-down in the search, and the same was appropriate for purposes of the officer's safety.

Smith entered a conditional guilty plea to the charge. At the hearing for the entry of the plea, the Commonwealth

3

introduced a criminal conviction order showing that Smith had previously been convicted of both possession of a firearm by a person convicted of a felony, with an offense date of October 18, 2006, and possession of cocaine with intent to distribute, with an offense date of March 13, 2007.

On appeal to the Court of Appeals, Smith asserted that the trial court erred in denying his motion to suppress. The Court of Appeals agreed and reversed his conviction. Smith v. Commonwealth, 55 Va. App. 30, 54, 683 S.E.2d 316, 328 (2009). In considering whether Officers Hedman and Moore had reasonable suspicion to frisk Smith, the Court of Appeals held that the holding of United States v. Hensley, 469 U.S. 221, 229-33 (1985), "permits imputation of the knowledge of the officers who entered the information in the police department's PISTOL system to Officers Hedman and Moore." Smith, 55 Va. App. at 42-43, 683 S.E.2d at 322. According to the Court of Appeals,

> [t]he officers who entered the data into PISTOL were not shown to have done so based on any more information than that [Smith] had been arrested for possession of a firearm by a convicted felon for an incident that had occurred eleven months earlier and possession of cocaine with an intent to distribute for an incident that had occurred six months earlier.

Id. at 54, 683 S.E.2d at 328.

Even though knowledge of the two arrests was imputed to Officers Hedman and Moore, the Court of Appeals concluded that "in the absence of some contemporaneous indication that the

4

individual might be carrying a weapon, these facts do not provide reasonable suspicion to believe he may be presently armed and dangerous."  Id. at 46, 683 S.E.2d at 324.

We awarded the Commonwealth this appeal.

## DISCUSSION

In its appeal to this Court, the Commonwealth raised a number of assignments of error generally asserting that the PISTOL alert combined with the public's interest in officer safety qualified as sufficient reasonable suspicion to conduct a pat down search for weapons under Terry v. Ohio, 392 U.S. 1 (1968).  In our view, the record supports the conclusion that Officers Hedman and Moore had reasonable suspicion to justify the frisk.[2]

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.  The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.  We will review the trial court's application of the law de novo.

Jones v. Commonwealth, 279 Va. 665, 670, 691 S.E.2d 801, 803 (2010).

---

[2]  Having reached this conclusion, we need not address other issues raised by the Commonwealth.

5

As an initial matter, it is undisputed that the traffic stop was valid. The only issue in this case is whether the subsequent frisk was supported by reasonable suspicion.

Under settled constitutional principles, once a law enforcement officer has conducted a valid traffic stop, the officer is justified in conducting a frisk of the person for weapons if the officer reasonably suspects that the person stopped is armed and dangerous. Arizona v. Johnson, 555 U.S. ___, ___, 129 S.Ct. 781, 784 (2009). In Johnson, the Court clarified that Terry stop and frisk principles apply to traffic stops:

> [I]n a traffic-stop setting, the first Terry condition – a lawful investigatory stop--is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

Id. at ___, 129 S.Ct. at 784.

In explaining the officer's authority to conduct such a frisk, the Supreme Court has also stated:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be

6

> given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry, 392 U.S. at 27 (citations omitted).

The Supreme Court recently reiterated its recognition that "traffic stops are especially fraught with danger to police officers." Johnson, 555 U.S. at ___, 129 S.Ct. at 786 (internal quotation marks omitted). Considering the danger posed to officers during traffic stops, the Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977).

Twenty years later, the Supreme Court extended the Mimms rule to passengers, holding that an officer may order passengers to get out of the vehicle during a valid traffic stop. Maryland v. Wilson, 519 U.S. 408, 415 (1997). In Wilson, the Court recognized that "the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger." Id. at 413. The Court emphasized that the risk of a violent encounter during a traffic stop "stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious

7

crime might be uncovered during the stop." Id. at 414. Lastly, the Supreme Court has stated that "officers who conduct routine traffic stop[s] may perform a pat-down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." Johnson, 555 U.S. at ___, 129 S.Ct. at 787 (internal quotation marks omitted).

In Terry, the United States Supreme Court, in announcing the "stop and frisk" rule, made this statement relevant to officer safety:

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
>
> In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Terry, 392 U.S. at 23-24.

In the context of a traffic stop in which multiple individuals were present in the vehicle, the officer's knowledge

8

of the driver's, or the occupants', prior criminal history is highly relevant in determining whether the officer had reasonable suspicion to conduct a pat down for his or her safety, particularly when that prior criminal history included weapons and dangerous narcotics violations.  In this case, after conducting a valid traffic stop, Officers Hedman and Moore were alerted via the PISTOL system that Smith was "probably armed and a narcotics seller/user."  We agree with the Court of Appeals that the knowledge of the officers who entered the criminal history into the PISTOL system is imputed to Officers Hedman and Moore for purposes of assessing whether they had reasonable suspicion to frisk Smith.  Smith v. Commonwealth, 55 Va. App. 30, 42-43, 683 S.E.2d 316, 322-23 (2009); see also United States v. Hensley, 469 U.S. 221, 229-33 (1985).

In Hensley, the United States Supreme Court addressed whether police officers may stop an individual who is the subject of a "wanted flyer" while they attempt to find out if an arrest warrant had been issued.  469 U.S. at 223.  The Court held that where officers issue a flyer based upon reasonable suspicion that an individual had committed a criminal offense, and other officers, who lack personal knowledge amounting to reasonable suspicion, objectively rely on the flyer to conduct a stop, the validity of the stop turns on whether the officers who

9

issued the flyer had the requisite reasonable suspicion. Id. at 232.

We agree with the Court of Appeals that "the imputation-of-knowledge principles used in Hensley to determine whether reasonable suspicion existed for a stop also apply to determining whether an individual, already being detained in the course of a legitimate stop, may be subjected to a weapons frisk." Smith, 55 Va. App. at 43, 683 S.E.2d at 323. In determining whether the Fourth Amendment was violated, the issue before us is whether the information known to the officer making that PISTOL entry – coupled with the personal knowledge of Officers Hedman and Moore – was sufficient to provide reasonable suspicion for the frisk.

The PISTOL system informed Officers Hedman and Moore that Smith was "probably armed and a narcotics seller/user." Applying the imputation principles enunciated in Hensley, Officers Hedman and Moore also knew that Smith was arrested for possession of a firearm by a convicted felon eleven months prior to the stop at issue in this case. This information, as Detective Neville testified at the hearing on Smith's motion to suppress, was entered into the PISTOL system by Officer Harris. Detective Neville stated that this entry would have resulted in the "probably armed" portion of the alert. Therefore, in assessing the PISTOL alert, Officers Hedman and Moore had a

reasonable belief that Smith was a convicted felon, and that he had been charged and arrested for possession of a firearm by a convicted felon eleven months earlier.

The Court of Appeals went further and assumed that the drug-related portion of the alert was based on Smith's act of possessing with intent to distribute cocaine, which occurred six months prior to the stop that is at issue in this case.  Smith, 55 Va. App. at 45, 683 S.E.2d at 323.  The Court of Appeals held that the record in this case established that the data entry officers also knew that Smith had been arrested for possessing cocaine with intent to distribute six months prior to the stop at issue in this case.  Id. at 45, 683 S.E.2d at 324. Accordingly, the Court of Appeals imputed this knowledge to Officers Hedman and Moore in assessing whether the officers had reasonable suspicion to justify the frisk of Smith.  In their briefs and during oral argument, the Commonwealth and Smith have adopted the Court of Appeals' position that knowledge of both arrests was imputed to Officers Hedman and Moore.

The details of Smith's criminal record, the knowledge of which is imputed to the officers based on the language appearing in the PISTOL alert, and reasonable inferences to be drawn therefrom are critical in determining whether the officers had reasonable suspicion to believe Smith was armed and dangerous. First, the officers knew that Smith was a convicted felon.

11

Second, they knew that despite having been convicted of a felony that prohibited his possession of a firearm, he was arrested eleven months prior to this encounter for possession of a firearm by a convicted felon.  Third, the officers knew that just five months after his arrest for possession of a firearm, which was also just six months prior to the date of this encounter, Smith was arrested for possessing cocaine with the intent to distribute, an offense that is closely associated with firearms due to the danger inherent in the drug trade.  See Jones v. Commonwealth, 272 Va. 692, 701 & n.3, 636 S.E.2d 403, 407 & n.3 (2006); United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998) ("the connection between illegal drug operations and guns in our society is a tight one").

We find that a reasonably prudent police officer, in light of his experience, and with due regard to his own safety when executing a valid traffic stop, has reasonable suspicion that an individual may be armed and dangerous based upon the officer's knowledge of the individual's prior felony conviction, followed by repeated charges over the previous eleven months involving firearms and a drug offense closely associated with firearms. The remoteness of arrests and convictions or an absence of weapons-related or dangerous offenses in an individual's criminal history may be such that the individual's criminal history is not sufficient for an officer to reasonably be

12

concerned about his safety or the safety of others in order to establish reasonable suspicion for a frisk.  However, in this case, Smith's criminal history of a prior felony conviction, his arrest eleven months prior for possession of a firearm by a convicted felon, and his arrest six months prior for possession of cocaine with the intent to distribute, was sufficient to provide the officers with reasonable suspicion that Smith may be armed and dangerous, justifying a pat-down or limited search of his outer clothing for weapons.

The cases cited by the dissent do not support the proposition that a prior criminal record involving arrests for weapons and intent to distribute narcotics violations cannot provide reasonable suspicion to support a frisk of a passenger conducted during a valid traffic stop, without additional evidence of the suspect's appearance, or behavior, or the circumstances of the encounter providing an indication of criminal activity.  Further, those cases do not support the dissent's belief that the majority opinion is at odds with United States Supreme Court precedent and departs from established Fourth Amendment jurisprudence.

The majority of the cases cited by the dissent involve the first prong of the Terry analysis, that a brief investigatory stop of persons and vehicles is justified if the officer's action is supported by reasonable suspicion that criminal

13

activity may be afoot. United States v. Arvizu, 534 U.S. 266, 273 (2002). For example, in United States v. Foster, 634 F.3d 243, 245-26, 249 (4th Cir. 2011), a recent decision by the United States Court of Appeals for the Fourth Circuit, cited by the dissent, evidence discovered in the search of a glove box was suppressed based upon the improper stop of the vehicle. Nowhere in our opinion do we state that a police officer armed with knowledge of a suspect's criminal record, even a record including firearms and narcotics, is justified in stopping an individual based solely upon that record, without additional circumstances supporting a reasonable suspicion that a crime has occurred or is occurring.

As the Supreme Court clarified in Arizona v. Johnson, a "stop and frisk" is constitutionally permissible if two conditions are met. 555 U.S. at ___, 129 S.Ct. at 784. The first condition is that the investigatory stop must be lawful. Id. As in this case, in which Smith was a passenger in a vehicle validly stopped for a traffic offense, that requirement is met when the police officer reasonably suspects that a person stopped (the driver) is committing or has committed a violation of the laws regulating the operation of motor vehicles. The second condition is met when the police officer reasonably suspects that the person stopped (including a passenger in the stopped vehicle) is armed and dangerous. Id.

Although reasonable suspicion is required for both the initial stop or seizure and for the subsequent frisk, once there is reasonable suspicion that a crime has occurred or may be occurring to justify a stop, there does not need to be additional reasonable suspicion that the passenger in the lawfully stopped vehicle is himself personally involved in criminal activity.  The inquiry turns on whether there is reasonable suspicion that the person subjected to the frisk is armed and dangerous.  Id.

Among the cases cited by the dissent, several cases do involve frisks.  While several of those cases do state that a criminal record, standing alone, cannot create a reasonable suspicion to support a search or seizure, in none of the cases was a frisk suppressed based upon the reasoning argued by the dissent.  For example, in State v. Valentine, 636 A.2d 505, 510-11 (N.J. 1994), a case affirming a conviction after denial of a challenge to a frisk, the New Jersey Supreme Court first stated, with a citation only to Terry, that a suspect's criminal history alone is not sufficient to justify a frisk of a suspect or to justify a frisk of a suspect once stopped.  But then, immediately thereafter, the court states that "[i]n many instances, a reasonable inference may be drawn that a suspect is armed and dangerous from the fact that he or she is known to have been armed and dangerous on previous occasions."  Id. at

15

511. And in State v. Giltner, 537 P.2d 14, 17 (Haw. 1975), also relied on by the dissent, evidence obtained by a frisk was suppressed because the seizure of the person was found to be "constitutionally impermissible." According to the Supreme Court of Hawaii, while the officer's personal knowledge that the accused was armed on a previous occasion "might have been an important factor in determining the legality of the frisk itself, it could not supply the justification for the initial seizure." Id.

It is not the fact that Smith had a criminal record that supplied the officers in this case with reasonable suspicion that Smith was armed and dangerous. It was the specific information contained in the criminal record that supplied the officers with information that Smith, a felon, had been armed and dangerous on previous occasions based on his arrests for unlawful possession of a firearm and possession with intent to distribute cocaine.

In McCain v. Commonwealth, 275 Va. 546, 554-55, 659 S.E.2d 512, 516-17 (2008), a case (like this one) in which nothing furtive or overtly illegal was observed about the vehicle's passenger by the officers on the scene of the traffic stop justifying "reasonable, individualized suspicion" that the passenger was armed and dangerous, this Court held that the fruits of a pat-down search should have been suppressed because

16

the only extrinsic information available to the officers was that the vehicle's passenger had merely recently visited a certain home where narcotics were thought to be trafficked, some months before.  In the present case, the PISTOL report was received, containing further important criminal history information, which established the reasonable inference that Smith may be armed and dangerous from the fact that he was known to have been armed and dangerous on previous occasions.  This information provided reasonable, individualized grounds for suspicion that Smith "may be armed and dangerous."  Johnson, 555 U.S. at ___, ___, 129 S.Ct. at 784, 787; Terry, 392 U.S. at 23-24, 27.

The proper function of the PISTOL system includes alerting police officers who have made valid stops to information that, in and of itself, may cause a prudent officer to reasonably suspect that an individual may be armed and dangerous.  In this case, the unchallenged stop is an intrusion that was justified by the officers' investigation of a suspected traffic offense. The officers' requiring the occupants to exit the vehicle is justified by case law, which balances the interest in officers' safety against the minimal intrusion of requiring the occupants to exit.  Upon learning of Smith's criminal record of a felony conviction and recent arrests for firearm and narcotics violations, the officers, for their own safety as well as the

17

safety of the community, were justified in questioning Smith further. Not being relieved of their safety concerns by Smith's denial of having weapons or drugs on his person, the officers were entitled to follow up the questioning with a limited search for weapons. The frisk, which is only a limited pat-down of the outer clothing for weapons, was justified by the knowledge of Smith's specific criminal history involving weapons and narcotics, which was imputed to the officers based upon the PISTOL system. Only after he felt the gun during the frisk was the officer justified in reaching into Smith's pocket and retrieving the gun.

CONCLUSION

For all of the foregoing reasons, we will reverse the judgment of the Court of Appeals, and enter final judgment affirming the conviction.

Reversed and final judgment.

JUSTICE GOODWYN, with whom SENIOR JUSTICE KOONTZ joins, and JUSTICE HASSELL concurs, dissenting.

The majority holds that law enforcement officers could reasonably suspect Corey Tayvon Smith was armed and dangerous and frisk him because of Smith's past criminal record, even though there was nothing about his appearance or behavior or the circumstances under which the police came in contact with him that would indicate that Smith was presently involved in

18

criminal activity or armed and presently dangerous. I believe that the majority opinion is at odds with United States Supreme Court precedent regarding rights afforded under the Fourth Amendment and departs from established Fourth Amendment jurisprudence. As evidenced by the majority's inability to cite any precedent supporting its position, no other court in the United States has found that an officer can conduct a frisk based solely on knowledge of an individual's criminal record. Therefore, I must respectfully dissent.

The only aspect in the majority opinion disputed by this dissent concerns whether the officers had reasonable suspicion to frisk Smith. It is undisputed that the initial stop of the vehicle was proper. It is also undisputed that the officers' request for Smith's identification and their background check on him were proper. Additionally, it is undisputed that upon viewing the PISTOL alert that Smith was "probably armed and a narcotics seller/user," the officers could order Smith out of the vehicle and vigilantly observe him during the traffic stop. However, without any additional factor suggesting Smith was armed and presently dangerous, the officers could not frisk Smith based solely on the PISTOL alert, because under settled constitutional principles, a generalized concern for officer safety is not enough to justify the frisk of a citizen. A police officer must be able to point to specific and articulable

facts showing that criminal activity may be afoot or that the person may be armed and presently dangerous in order to justify a pat down search.  See McCain v. Commonwealth, 275 Va. 546, 552, 555-56, 659 S.E.2d 512, 516, 518 (2008) (majority opinion and dissent, both citing Terry v. Ohio, 392 U.S. 1 (1968)).

Smith was a passenger in a vehicle stopped because of a defective brake light.  After stopping the vehicle in which Smith was riding, the officers requested and obtained identification information, not only from the driver but also from Smith.  The requested information was willingly provided.

The officers checked and determined that there were no outstanding warrants for Smith's arrest.  However, upon receiving an alert from the PISTOL system stating that Smith was "probably armed and a narcotics seller/user," an officer asked Smith to step out of the vehicle and proceeded to frisk Smith. Smith was cooperative until he declined the officer's request to frisk him.  The officers removed Smith from the vehicle and searched him solely because of the PISTOL alert.

As pointed out by the Court of Appeals and by the majority, the Fourth Amendment analysis concerning whether the PISTOL alert supports the existence of a reasonable suspicion must focus on the facts known by the person or persons who entered the information into the PISTOL system.  Knowledge of those facts may be imputed to Officers Hedman and Moore in determining

20

whether there was sufficient reasonable suspicion to justify frisking Smith.

According to the majority, the facts, properly imputed to have been known by the officers because of the PISTOL alert, were that Smith was a felon who had been arrested for possession of a firearm eleven months prior to the stop and that he had been arrested for possessing cocaine with intent to distribute six months prior to the stop. The majority concludes that knowledge of those facts concerning Smith's criminal record was sufficient, without more, to create a reasonable suspicion that Smith was armed and presently dangerous. Established Fourth Amendment jurisprudence is to the contrary.

Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest. Terry, 392 U.S. at 27. A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). During the course of a traffic stop, an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle. Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). However, "because a frisk or 'pat-down' is substantially more intrusive than an order to exit a

21

vehicle, . . . an officer must have justification for a frisk or 'pat-down' beyond the mere justification for the traffic stop." United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). During a Terry stop, an officer may frisk a person if he develops reasonable suspicion during the stop to believe the particular person to be frisked is armed and dangerous. Knowles v. Iowa, 525 U.S. 113, 117-18 (1998); see Adams v. Williams, 407 U.S. 143, 146 (1972). Thus, there must be reasonable suspicion justifying the stop and reasonable suspicion justifying a frisk which occurs after a proper stop has been made. The constitutional standard for both stops and frisks is the same — reasonable suspicion.

The authority is unanimous in stating that an individual's criminal record alone is not sufficient to support a finding of reasonable suspicion whether it regards a stop or a frisk. See United States v. Rice, 483 F.3d 1079, 1085 (10th Cir. 2007) ("a criminal record, standing alone, is not sufficient to create reasonable suspicion of anything) (emphasis added); accord, United States v. Monteiro, 447 F.3d 39, 47 (1st Cir. 2006) (knowledge of a person's prior criminal involvement or mere arrest is insufficient to establish reasonable suspicion); United States v. Mathurin, 561 F.3d 170, 177 (3d Cir. 2009) (criminal record alone insufficient to amount to reasonable suspicion); United States v. Johnson, 427 F.3d 1053, 1057 (7th

22

Cir. 2005) (law enforcement officer's knowledge of a suspect's criminal history is not enough, in and of itself, to support existence of reasonable suspicion); Burrell v. McIlroy, 464 F.3d 853, 858 n. 3 (9th Cir. 2006) (prior criminal history alone cannot establish reasonable suspicion); United States v. Laughrin, 438 F.3d 1245, 1247 (10th Cir. 2006) (law enforcement officers cannot disturb a person's liberty solely because of a criminal record); Outlaw v. State, 17 P.3d 150, 157 (Colo. 2001) (knowledge of prior criminal record not sufficient to create reasonable suspicion).

As a result, officers cannot justify an investigatory stop solely on the basis of an individual's criminal record. See United States v. Oates, 560 F.2d 45, 59 (2d Cir. 1977) ("investigative stops certainly cannot be made 'merely because [the detainees] have criminal records or bad reputations'"); Carter v. State, 692 N.E.2d 464, 467 (Ind. Ct. App. 1997) (officer's mere knowledge of defendant and his prior criminal record was not sufficient to justify the investigatory stop); Commonwealth v. Morgan, 248 S.W.3d 538, 541 (Ky. 2008) (prior record of a suspect, standing alone, will never justify a Terry stop); State v. Collins, 479 A.2d 344, 346 (Me. 1984) (investigative stop cannot be made merely because person has a criminal record). Likewise, an individual's criminal record, alone, is not sufficient to establish reasonable suspicion for a

23

frisk.  See United States v. Miranda, 393 Fed. Appx. 243, 245-46 (5th Cir. 2010) (prior criminal conduct, standing alone, cannot create a reasonable suspicion to support a search or seizure); United States v. Hairston, 439 F. Supp. 515, 518 (N.D. Ill. 1977) (prior conviction cannot justify search and seizure in absence of other circumstances); State v. Giltner, 537 P.2d 14, 17 (Haw. 1975) ("The reputation of an individual for carrying arms is not, in and of itself, a sufficient basis for a stop and frisk."); State v. Valentine, 636 A.2d 505, 550 (N.J. 1994) (permitting the use of suspect's prior criminal history alone to justify a Terry frisk may lead to unwarranted intrusions on a suspect's constitutional protections).  As stated by the Supreme Court of Maryland, "[T]o allow the reasonable articulable suspicion standard to be satisfied based upon a person's [criminal] status, rather than an individualized assessment of the circumstances, would undermine the purpose [of] requiring officers to justify their reasons for searching a particular individual."  State v. Nieves, 861 A.2d 62, 77 (Md. 2004).

There is no authority to support the majority's proposition that a prior criminal record involving arrests for weapons and intent to distribute narcotics is sufficient to provide reasonable suspicion to support a frisk, without any additional indicators that the individual is armed and presently dangerous. While a person's criminal record is among the proper factors to

24

be considered in determining if reasonable suspicion exists, no other jurisdiction has found that a person's criminal record, standing alone, creates a reasonable suspicion to support a search or seizure.  In fact, every other jurisdiction in the United States that has considered the issue has decided the opposite.  Each has required some additional evidence of a suspect's appearance or behavior or circumstances regarding the encounter, in addition to the defendant's criminal record, to support the existence of a reasonable suspicion.

In Valentine, for example, the Supreme Court of New Jersey affirmed a Terry frisk based on a review of the totality of the circumstances.  After approaching a suspect believed to be engaged in criminal activity, the officer initially became alarmed because the defendant had his hands in his pockets.  636 A.2d at 512.  The officer developed further suspicion when the defendant offered weak excuses in response to the officer's questions, refused to make eye contact, and repeatedly looked around the area.  Id.  This encounter occurred after midnight on a dark street known to the officer as a high-crime area.  In addition, the officer recognized the defendant as someone who had a long history of criminal activity, including armed robberies and weapons offenses.  Id. at 512-13.  Thus, as has heretofore all other jurisdictions, the Supreme Court of New Jersey required evidence of other contemporaneous observations

25

or circumstances, in addition to knowledge of the suspect's criminal history, to justify a Terry frisk. Id.; see also, e.g., United States v. Stachowiak, 521 F.3d 852, 856-57 (8th Cir. 2008) (officer's knowledge that defendant was likely to be armed, coupled with the observation of defendant's furtive gesture and refusal to cooperate, provided reasonable suspicion to believe officer in danger); Rice, 483 F.3d at 1084 (facts justifying frisk include defendant's presence in high crime area at 2:30 a.m., officer's observation of car slowing intermittently in a manner consistent with preparing for a burglary or drive-by shooting, officer's observation that car did not have a tag light, and computer check identifying defendant as known to be armed and dangerous); Collins, 479 A.2d at 346 (frisk justified by officer's belief that defendant may have been armed on a prior occasion and the defendant's belligerent behavior on this occasion).

As recently as last month, the United States Court of Appeals for the Fourth Circuit reiterated the heretofore established jurisprudence concerning the issue. "A prior criminal record is not, standing alone, sufficient to create reasonable suspicion. [The investigating officer] was required to pair his prior knowledge of [defendant's] criminal record with some more 'concrete factors' to demonstrate that there was a reasonable suspicion of current criminal activity." United

States v. Foster, 634 F.3d 243, 245-46 (4th Cir. 2011) (internal citations and quotation marks omitted).

In its opinion, the majority does not pair the officers' knowledge of Smith's prior criminal involvement with more concrete factors that would be necessary to create a reasonable suspicion that Smith was presently engaged in criminal conduct or was armed and presently dangerous at the time of the frisk. Instead, the majority holds that knowledge of Smith's past criminal record was sufficient, by itself, to create a reasonable suspicion that Smith was armed and presently dangerous. The majority opinion contravenes all previous precedent on the issue.

In this case, the officers knew there was no outstanding warrant for Smith's arrest at the time he was searched. In addition, they neither observed nor discerned any present circumstances to support any suspicion that Smith was engaged in criminal activity or that he was armed and dangerous. There is no evidence in the record indicating that the officers observed Smith or the driver engage in any furtive behavior tending to indicate the presence of a weapon or some sort of contraband or other criminal activity. There is no indication that the officers saw any signs of weapons, drugs or other contraband on the person of the car's occupants or in the vehicle. In fact, the record is completely devoid of any evidence that the

characteristics of the area surrounding the stop, the time of the stop, the conduct, behavior or appearance of Smith, or the character of the offense they were investigating (defective brake light and/or trespass) in any way support the conclusion that Smith was engaged in criminal conduct or armed and presently dangerous.  It is undisputed that the officer frisked Smith based solely upon the PISTOL alert.

Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances.  Samson v. California, 547 U.S. 843, 848 (2006).  Review of the existence of probable cause or reasonable suspicion involves application of an objective, rather than a subjective, standard.  Terry, 392 U.S. at 21-22; Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000).  In its analysis of the reasonable suspicion issue, the majority properly imputes knowledge of Smith's criminal history to the officers.  However, in evaluating the totality of the circumstances, the majority does not consider information known to the officers in addition to that provided by the PISTOL alert.  Having been informed that there was no outstanding arrest warrant for Smith, the officers knew that after reviewing Smith's criminal record and being aware of the previous charges, a judicial officer had found either that the charges were not valid, or that despite the charges, Smith need not be incarcerated because he was not a

danger to the public.  See Code § 19.2-120.  They also knew Smith was stopped only because he was a passenger in a car with a defective brake light and that they had not observed anything to lead them to believe he was presently involved in criminal activity or that he was armed and presently dangerous.  The officers' knowledge of Smith's prior felony conviction and the two arrests in the eleven months before the encounter with the police are not, without some contemporaneous observation indicating criminal activity or present dangerousness, objectively sufficient to support a reasonable suspicion that Smith was presently involved in criminal activity or that he was armed and presently dangerous and thus subject to being frisked in compliance with the Fourth Amendment.

In apparent contravention of previous precedent, the majority holds that certain people, because of their criminal record, are subject to a pat down search if stopped for a minor traffic violation, regardless of whether the police have any contemporaneous objective indicia of their current involvement with criminal activity or of their being armed and presently dangerous.  Inherent in the majority opinion's ruling is the conclusion that individuals, who have been determined by a judicial officer to be sufficiently safe to release from custody, may be presumed by law enforcement officers to be armed and dangerous.  Such a presumption is the type of "hunch" the

29

Supreme Court of the United States has admonished should not be allowed in determining the constitutional propriety of a search. See Terry, 392 U.S. at 27.

Reliance on the PISTOL database is a useful tool that can improve officer safety. However, its use must comply with the requirements of the Fourth Amendment. When the officers' investigation indicated that Smith had been lawfully released from custody, despite the fact that he was a felon who had been arrested twice in eleven months, the officers did not have the right to search him without observing something about his person or behavior or having some additional information that would lead them to believe he was engaged in criminal activity or armed and presently dangerous at the time of the frisk. The decision of the majority results in the ironic situation in which individuals deemed by the legal system to be safe enough to be released into society can be regarded by police officers as inherently dangerous to the point that they can be frisked solely based upon an officer's knowledge that they have been charged and lawfully released.

For these reasons, and the reasons stated by the Court of Appeals in its decision, I respectfully dissent. I would affirm the judgment of the Court of Appeals.