COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Petty and Beales
Argued at Chesapeake, Virginia


ABONY DAYON BLANCHARD

                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 0306-11-1                        JUDGE RANDOLPH A. BEALES
                                                           APRIL 10, 2012
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                            E. Preston Grissom, Judge

              Oksana V. LaBounty, Assistant Public Defender (Office of the
              Public Defender, on brief), for appellant.

              Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


        Abony Dayon Blanchard (appellant) entered into a conditional guilty plea to possession of a

firearm by a convicted felon under Code § 18.2-308.2, thereby preserving his right to appeal the

trial court's denial of his motion to suppress the firearm.  On appeal, appellant claims that the

officers unlawfully detained him and began to conduct an unlawful pat down prior to his admission

that he possessed a firearm.  We disagree, and we affirm appellant's conviction for the following

reasons.

                                    I. BACKGROUND

        On appeal, we consider "the evidence in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court.  Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004).  On the night of April 26, 2010, Officers Bowman and Soeder

encountered appellant and his cousin while investigating a report that two males had attempted to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sell drugs to another individual. This encounter occurred in a high-crime area of Chesapeake that is known for drug activity. The officers approached appellant and his cousin, said that they were investigating a call about possible narcotics distribution in the area, and stated that appellant and his cousin matched the description of the possible suspects.

At the beginning of the encounter, appellant and his cousin both had their hands in their pockets. Out of concern for the officers' safety, Officer Soeder told appellant and his cousin to take their hands out of their pockets, and both appellant and his cousin initially complied. Appellant and his cousin also readily provided the officers with their identifying information, and Officer Bowman returned to the patrol car to determine if there were any outstanding warrants for their arrest. Officer Soeder remained with appellant and his cousin.

During the course of the encounter, Officer Soeder noticed that appellant had put his hands back into his pockets, which concerned Officer Soeder greatly. At the suppression hearing, Officer Soeder testified:

> Based on my experience, most of – I would say, a large number of
> the people that I come into contact with that often put their hands
> in a specific pocket, they are checking the security of a weapon
> that's usually located in that general vicinity, not to mention that
> we were in a high-crime area that's known for drugs and guns and
> shots-fired calls all of the time.

Officer Soeder told appellant, "Hey, just keep your hands out of your pockets," adding, "I don't know what you have in your pockets." However, appellant continued putting his hands back into his pockets – despite Officer Soeder telling appellant to remove his hands from his pockets at least three times. Furthermore, Officer Soeder observed that appellant was "extremely nervous" and "had sweat beading on his forehead," even though the record reflects that it was a cold night.

Concerned that appellant could be hiding a weapon in his pocket, Officer Soeder decided to conduct a limited pat down of appellant to ensure he was not armed. Officer Soeder told

- 2 -

appellant that he was going to conduct the pat down and asked appellant to put his hands on top of his head with his fingers interlocked. When Officer Soeder put his hand on top of appellant's hands in preparation for the pat down, appellant stated that Officer Soeder did not have a right to search him. Officer Soeder responded that he was only patting appellant down for weapons. Appellant then admitted possessing a firearm, stating, "I am going to jail because I have a gun on me."[1]

At the suppression hearing, Officer Soeder explained why he decided to conduct a pat down of appellant – but not of appellant's cousin, who never placed his hands back in his pockets during the encounter.[2] Officer Soeder testified:

> [W]e really didn't have a reason to pat [appellant's cousin] down. I mean, he was completely cooperative. He never put his hands back in his pockets. He didn't draw any attention to us. He wasn't acting nervous. He wasn't sweating profusely. I mean, he was making eye contact with us when we talked to him. He wasn't doing anything out of the ordinary to raise our suspicion that he may have had something on him such as a firearm.

Officer Soeder also testified that, unlike appellant, appellant's cousin "just remained as cool as one could be . . . during the entire event."

The trial court found that the encounter remained consensual until appellant submitted to Officer Soeder's directions for beginning the pat down. However, the trial court noted that the "turning point" of the encounter occurred prior to this seizure of appellant. The trial court found

---

[1] Appellant then indicated that the firearm was positioned near his left hip. Officer Bowman seized the firearm, which was stuffed inside appellant's waistband.

[2] Appellant argues on appeal that the officers also performed a pat down of his cousin prior to the seizure of the firearm. However, the trial court rejected the cousin's testimony to this effect at the suppression hearing. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

that appellant's behavior during the consensual portion of the encounter – particularly appellant's refusal to keep his hands out of his pockets, where they could be seen – "would cause any police officer under those circumstances to be suspicious that he may be at risk. . . . That would, in and of itself, considering the totality of the circumstances, generate a reasonable suspicion that I may be harmed." Accordingly, the trial court denied appellant's motion to suppress.

## II. ANALYSIS

"In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights," an appellate court considers "the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008). "The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law *de novo*." Id. at 168-69, 655 S.E.2d at 3.

"The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010 (quoting U.S. Const. amend. IV). However, "[n]ot every encounter that the police have with a member of the public is a seizure." Washington v. Commonwealth, 29 Va. App. 5, 10, 509 S.E.2d 512, 514 (1999). The Supreme Court of the United States has explained that, "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business,'" then the encounter remains consensual and does not implicate the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)). Thus, "[a] voluntary or consensual encounter between a police officer and a citizen does 'not implicate the fourth amendment,' as long as 'a reasonable person would understand that he or

she could refuse to cooperate.'" Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 593 (1993) (quoting Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988)).

As appellant's counsel acknowledged in the trial court, a seizure certainly did not occur under the Fourth Amendment simply because police officers approached appellant and his cousin and initiated a conversation with them.[3] See Bostick, 501 U.S. at 434 ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.").

Instead, appellant contends that he was seized under the Fourth Amendment when Officer Soeder instructed him to take his hands out of his pockets. We disagree. Based on this Court's reasoning and decision in Jones v. Commonwealth, 52 Va. App. 548, 665 S.E.2d 261 (2008), appellant *never actually submitted* to Officer Soeder's instructions.

In Jones, this Court held, "[T]here is a *condition precedent* to a seizure: The individual must *submit* to the officer's force or authority." Id. at 557, 665 S.E.2d at 265 (emphasis in original). This Court's holding in Jones is consistent with the Supreme Court of Virginia's explanation that "[a] seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001); see Cochran v. Commonwealth, 258 Va. 604, 608, 521 S.E.2d 287, 289 (1999).

---

[3] In addition, while appellant and his cousin provided their identification to the police officers, "[t]he Fourth Amendment also is not implicated when a person voluntarily responds to a police request to produce identification" provided that "the police do not convey, by word or deed," that compliance is mandatory. Montague v. Commonwealth, 278 Va. 532, 538, 684 S.E.2d 583, 587 (2009). The Supreme Court of the United States has explained, "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 216 (1984).

This Court's decision in Jones is controlling on the facts in this case – which are remarkably similar to those in Jones. There, two police officers observed Jones sitting alone in a vehicle parked in the parking lot of a hotel known for drug transactions. The officers approached the vehicle and initiated a consensual encounter with Jones. During this encounter, the officers observed Jones reaching toward the floorboard of the vehicle. Concerned that a weapon was within Jones's reach, one of the officers instructed Jones to keep his hands on the steering wheel. Although Jones initially complied with this instruction, Jones then began reaching toward the floorboard again. When Jones reached for the floorboard a third time, the officer drew his firearm and ordered Jones to exit the vehicle. Jones, 52 Va. App. at 551-54, 665 S.E.2d at 264.

On appeal, this Court held that neither Jones's initial compliance with the officer's instruction to keep his hands on the steering wheel nor the officer's repeating of this instruction multiple times transformed the consensual encounter into a seizure. This Court explained:

> As noted, after the officers approached Jones and [Officer] Tovar initiated conversation, Jones reached down to the floorboard and Tovar asked him to put his hands on the wheel of the vehicle. Then, on three occasions, Jones refused to comply with that command and reached for the floorboard. Thus, he did *not* submit to Tovar's assertion of authority.

Id. at 557, 665 S.E.2d at 265-66. Therefore, this Court held that a seizure occurred when the officer drew his weapon and ordered Jones to exit the vehicle – but *not* before then. Id. at 557, 665 S.E.2d at 266.

The facts here mirror the facts in Jones in many relevant aspects. Like the officer in Jones, Officer Soeder, in this case, instructed appellant to keep his hands where they could be seen during the encounter. Appellant, like Jones, *initially* complied with the officer's request. However, as in Jones, this decision to comply with the officer's instructions was very brief. Appellant, like Jones, then disregarded the officer's instructions multiple times.

On these facts, we conclude that – as in Jones – the encounter here remained consensual because appellant "did *not* submit to [the officer's] assertion of authority." Id. (emphasis in original). By the time that appellant was actually seized for Fourth Amendment purposes,[4] appellant had disregarded Officer Soeder's instructions to take his hands out of his pockets multiple times – given the officer's testimony that he told appellant to take his hands out of his pockets at least three times before deciding to conduct the pat down.

Appellant also contends that Officer Soeder lacked an adequate basis for initiating a pat down for weapons. "'An officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot and the person subjected to the search may be armed and dangerous." Bandy v. Commonwealth, 52 Va. App. 510, 517-18, 664 S.E.2d 519, 522 (2008) (quoting Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000); see Commonwealth v. Smith, 281 Va. 582, 591, 709 S.E.2d 139, 143 (2011) ("'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" (quoting Terry v. Ohio, 392 U.S. 1, 24 (1968))). "Circumstances relevant in this analysis include characteristics of the area surrounding the [Terry] stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and

---

[4] Appellant was not seized until Officer Soeder told appellant that he would be conducting a pat down for weapons. See Bandy v. Commonwealth, 52 Va. App. 510, 517, 664 S.E.2d 519, 522 (2008) ("The consensual nature of the encounter changed, however, when Officer Nielson told [the defendant] that he needed to pat him down."); Walker v. Commonwealth, 42 Va. App. 782, 790, 595 S.E.2d 30, 34 (2004) ("Officer Floriano then explained that he intended to pat down [the defendant]. At this point, a reasonable person would not believe he could ignore the officer's requests and walk away.").

experienced in the detection of crime." McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008).

In this case, Officers Bowman and Soeder encountered appellant and his cousin while investigating a report of an attempted drug transaction in a high-crime area that is known for drug activity. "Courts have often recognized that 'the connection between illegal drug operations and guns is a tight one.'" Bandy, 52 Va. App. at 518, 664 S.E.2d at 523 (quoting Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006)); see United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998).

At the beginning of the encounter, both appellant and his cousin had their hands in their pockets – where Officer Soeder was aware that firearms are often concealed, based on his training and experience. Officer Soeder reasonably instructed appellant and his cousin to remove their hands from their pockets, so that their hands could be seen. Appellant's cousin removed his hands from his pockets and kept his hands where they could be seen throughout the encounter. Appellant, however, only initially and briefly removed his hands from his pockets – but then placed his hands back in his pockets. Appellant then continued placing his hands inside his pockets despite at least three requests from Officer Soeder that appellant remove his hands from his pockets. Moreover, Officer Soeder observed that appellant was nervous and was sweating profusely – even though it was a cold night.

"The common thread in those cases involving high crime areas and nervous behavior is the specific act of a furtive gesture to suggest that the suspect is armed." Thompson v. Commonwealth, 54 Va. App. 1, 10, 675 S.E.2d 832, 836 (2009); see Walker v. Commonwealth, 42 Va. App. 782, 792, 595 S.E.2d 30, 35 (2004) ("[The defendant] then refused to remove his hand from his own pocket when asked to do so by the officer. Appellant also appeared extremely nervous and was breathing very heavily."). Based on appellant's persistence in

placing his hands in his pockets (as well as the rest of the totality of the circumstances in this case), Officer Soeder had a reasonable, articulable suspicion that appellant possessed a concealed weapon – and, according to this Court's decision in Jones, "a reasonable suspicion of that offense *ipso facto* rendered [appellant] potentially armed and dangerous." Jones, 52 Va. App. at 560-61, 665 S.E.2d at 267; see Andrews v. Commonwealth, 37 Va. App. 479, 492, 559 S.E.2d 401, 408 (2002) ("[W]e find that [Officer] Wilson had reasonable cause to believe that [the defendant] might be carrying a concealed weapon and that the investigatory stop and limited pat-down search for weapons were warranted to protect himself and others who might be in danger.").

Therefore, as in Jones, appellant's actions during a consensual encounter "generated a reasonable articulable suspicion" that appellant "possessed a concealed weapon and was, accordingly, armed and dangerous, thus justifying the seizure." Jones, 52 Va. App. at 564, 665 S.E.2d at 269. Appellant then admitted possessing a firearm as Officer Soeder was preparing to begin the pat down. Accordingly, given these circumstances, the trial court did not err when it denied appellant's motion to suppress the firearm.

### III. CONCLUSION

The encounter here remained consensual until Officer Soeder developed a reasonable, articulable suspicion that appellant possessed a concealed firearm and, therefore, was armed and dangerous. Officer Soeder then lawfully seized appellant and began initiating a pat down of appellant for weapons when appellant admitted that he possessed a firearm. Based on this record, we conclude that the trial court did not err when it denied appellant's motion to suppress the firearm. Accordingly, for the foregoing reasons, we affirm appellant's conviction for possession of a firearm by a convicted felon.

Affirmed.