COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


GREGORY LAMONT LEWIS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1543-10-2                  JUDGE RUDOLPH BUMGARDNER, III
                                                       NOVEMBER 15, 2011
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                               Bradley B. Cavedo, Judge

              Catherine French, Supervising Assistant Public Defender, for
              appellant.

              Josephine F. Whalen, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


       Gregory Lamont Lewis entered a conditional guilty plea to possession of cocaine with

intent to distribute, Code § 18.2-248. He appeals the denial of his motion to suppress the drugs

found on his person, maintaining he was illegally seized. We conclude the defendant was not

seized before the police had probable cause to arrest, and affirm the conviction.

       "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the

defendant] to show that th[e] ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193,

197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007,

1010, 265 S.E.2d 729, 731 (1980)). While we are bound to review de novo the ultimate

questions of reasonable suspicion and probable cause, we "review findings of historical fact only

for clear error and . . . give due weight to inferences drawn from those facts by resident judges

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

Officer Mark Godwin was driving northbound on North Second Street in the City of Richmond when he observed the defendant standing alone at the side of the S&R Market. The officer testified that the area around the S&R Market was an open-air drug market, and he had personally made 20 to 25 drug arrests there. Officer Godwin had learned from those arrests that drug dealers usually kept their drugs on the side of the market, close to the building, and knew the police usually approached the market headed southbound on North Second Street. On this occasion Officer Godwin was purposely approaching from the opposite direction.

The defendant wore a one-piece jumpsuit over a shirt and jeans. The officer saw him "digging" in the "front of his pants." The officer parked his police cruiser and approached the defendant from the side. The jumpsuit was unzipped, and the defendant was removing his right hand from his pants after buttoning up his jeans. He appeared "surprised" to see the officer, quickly zipped his jumpsuit, and started walking away. The officer asked, "My man, can I speak with you for a minute?" When the defendant did not respond, he repeated the request. This time the defendant turned around, answered " yes," and walked back towards the officer. The officer asked the defendant if he had any identification on him, and the defendant said yes, reached into his pocket, and handed the officer a Virginia identification card. The officer spoke in a conversational tone, did not touch the defendant, nor draw his weapon.

Officer Godwin asked the defendant "what he was digging for down the front of his pants." The defendant responded that he "was trying to use the bathroom." The officer asked why he did not use the restroom inside the store, and the defendant said he had to go "real quick." The officer became suspicious because of the length of time the defendant had his hands inside his pants and because he was buttoning up his pants but had stated he only attempted to

relieve himself. Based on training and experience, Officer Godwin was aware that many drug dealers conceal narcotics in their crotch and buttocks area because those areas are typically not examined during a routine consensual search. The defendant appeared "fidgety," looking over his shoulders, and pacing back and forth as if he were going to flee. Officer Godwin called for a backup unit and a K-9 unit.

Officer Walker arrived within three minutes. He provided back-up support while Officer Godwin looked for signs that the defendant had urinated in public. When he found no indication that the defendant had recently urinated, Officer Godwin began processing the defendant's identification information. The defendant had no outstanding warrants but did have a record of prior drug arrests. K-9 Officer Robinson arrived within ten minutes while Godwin was still checking the defendant's status. His dog positively alerted to drugs on the defendant. Officer Godwin then placed the defendant into investigative detention, searched him, and recovered a plastic bag containing eight smaller bags of cocaine from the defendant's underwear. The encounter lasted about fifteen minutes.

The defendant concedes that Officer Godwin initiated a consensual encounter when he first approached and asked to speak with him. He claims he was seized before the dog alerted to drugs when Officer Walker arrived as backup and Officer Godwin began processing the defendant's identification data.

"Police officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008). A consensual encounter "does not require any justification and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004). Officers do not need to have a particularized suspicion to approach "individuals on the street or in other public places" and then

put "questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Barkley v. Commonwealth, 39 Va. App. 682, 691-93, 576 S.E.2d 234, 238-39 (2003).

"[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984); accord Montague v. Commonwealth, 278 Va. 532, 538, 684 S.E.2d 583, 587 (2009) (Fourth Amendment is not implicated when person voluntarily responds to police request to produce identification); McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (holding same); McLellan v. Commonwealth, 37 Va. App. 144, 153, 554 S.E.2d 699, 703 (2001) (holding same).

So long as officers refrain from inducing "cooperation by coercive means," they need no suspicion of criminality to "pose questions" and "ask for identification" from a citizen. Drayton, 536 U.S. at 201 (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)). If an officer does not seize a citizen simply by asking him to produce identification, a seizure cannot arise merely because the citizen agrees to do so. See, e.g., McCain, 261 Va. at 491, 545 S.E.2d at 545-46 (finding no seizure where officer requested and temporarily retained identification); McLellan, 37 Va. App. at 152-54, 554 S.E.2d at 703-04 (finding no seizure where detective, in public place, requested some identification).

Officer Godwin asked the defendant in a conversational tone if he had any identification, and the defendant handed the officer his identification card. The officer never restrained the defendant's freedom of movement by use of physical force or show of authority. The officer did not display his weapon, touch the defendant when he asked for identification, or use language or tone that indicated compliance with the request might be compelled. The entire encounter was brief and only lasted approximately fifteen minutes.

A seizure occurs only when an innocent person would reasonably conclude that an officer's "physical force or show of authority" has taken away the person's freedom to leave. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (citing Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).  And that conclusion cannot be made merely because of the presence of several armed officers, Drayton, 536 U.S. at 204-05, or the failure of the officers to inform the person that he is free to ignore further questioning, Delgado, 466 U.S. at 216, or their failure to tell the individual he is free to leave, Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).  "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."  Delgado, 466 U.S. at 216.

At no time during the consensual encounter did the defendant request the return of his identification card or express a desire to leave.  Viewed in the light most favorable to the Commonwealth, the evidence showed a brief consensual encounter between the defendant and the officers, not a seizure.  Seizure did not take place until the dog alerted and provided probable cause to believe the defendant was involved in criminal activity.

The trial court properly denied the motion to suppress.  Accordingly, we affirm the conviction.

Affirmed.