COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Athey
Argued at Norfolk, Virginia


CRYSTAL ESTELLE BAKER

MEMORANDUM OPINION[*] BY
v.        Record No. 1417-18-1          JUDGE CLIFFORD L. ATHEY, JR.
FEBRUARY 25, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge[1]

Daniel Hogan, Assistant Public Defender, for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Crystal Estelle Baker ("Baker") appeals the decision of the Circuit Court for the City of

Chesapeake ("trial court") denying her motion to suppress evidence recovered during a

warrantless search of a vehicle Baker was driving on February 11, 2018 in the City of

Chesapeake.  Baker argues that the trial court erred in finding (1) the search was a valid search

incident to Baker's arrest, (2) the search was valid based on the consent of the owner of the

vehicle, and (3) the Altoids tin would have been inevitably discovered.

The trial court also found that law enforcement lacked probable cause to search the

Altoids tin located in the vehicle.  On brief, the Commonwealth now challenges the trial court's

probable cause ruling and urges this Court to affirm the trial court's decision to deny Baker's

suppression motion pursuant to the "right-result different-reason" doctrine.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Banks presided over the trial of this case and signed the final order.  Judge
Randall D. Smith presided over the hearing on appellant's motion to suppress.

## I.  BACKGROUND[2]

At approximately 2:30 a.m. on February 11, 2018, Chesapeake Police Officer Hudgens ("Hudgens") initiated a traffic stop based upon a defective headlight.  As Hudgens followed the car, he saw the driver "moving around a lot in the vehicle towards the [driver's side] door and the center console of the car."

Following the stop, Hudgens identified Baker as the driver and Amanda Benton ("Benton"), the vehicle's owner, as a front seat passenger.  Hudgens did not see either occupant make any movements as he approached the car.  Hudgens subsequently learned that Baker's driver's license had been suspended.  Both Baker and Benton explained to Hudgens that Baker was driving that night because Benton was intoxicated.  Hudgens performed a records check, which revealed that Baker was the subject of an outstanding warrant for violating her probation.  As a result, Hudgens placed Baker under arrest and instructed her to exit the vehicle.  Hudgens next placed Baker into handcuffs, with her hands positioned behind her back.  Benton remained in the front passenger seat of her vehicle during Baker's arrest.  Hudgens then escorted Baker to a location between the rear bumper of Benton's vehicle and the front bumper of his police cruiser.  Hudgens then asked Baker whether she wanted him to retrieve her jacket from the driver's seat due to the cold weather, to which Baker replied, "yes."

Hudgens returned to Benton's vehicle and opened the driver's side door to retrieve Baker's jacket.  Hudgens later testified that "while opening the door," he "heard like a metallic rattling inside the door."  He saw a cigarette carton laying on Baker's jacket and searched it "[b]ecause she was going to jail . . . and couldn't take them to jail."  After he "mess[ed] with the cigarettes, [Hudgens also] observed a small Altoids [tin] inside the driver's side door."

---

[2] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial.  Gerald v. Commonwealth, 295 Va. 469, 472-73 (2018).

The location of the Altoids tin in the vehicle was consistent with the area Hudgens saw Baker was moving toward prior to the traffic stop. Hudgens then removed the Altoids tin from inside the driver's door, opened it, and used his flashlight to view its contents. Hudgens explained during trial that he searched the Altoids tin because he had seen them used as kits for drugs before. The Altoids tin contained a "white powdery residue" and three razor blades, which Hudgens testified, based on his experience, was serving as a heroin kit.

Although Baker was initially charged with one count of felony possession of heroin in violation of Code § 18.2-250, the charge was later amended to possession of fentanyl and cocaine, both in violation of Code § 18.2-250. Baker moved to suppress any evidence, including the Altoids tin and its contents, which was obtained after Hudgens retrieved Baker's jacket from the vehicle.

During the suppression hearing, Hudgens testified that while performing the records check, he learned that Baker was wanted for a probation violation, but was unsure whether the violation related to a previous drug charge or a previous larceny charge. Hudgens also testified that he was aware of Baker's criminal history, which included her prior drug charges. Hudgens further testified that he only arrested Baker for violating her probation on the previous larceny conviction. Hudgens admitted that Benton witnessed the search of the Altoids tin prior to consenting to the search of her vehicle. Finally, Hudgens acknowledged that no inventory search of the car ever occurred.

The trial court ruled that Hudgens lacked probable cause to open and inspect the contents of the Altoids tin but nevertheless denied the motion to suppress:

> First, I don't think the officer had probable cause. If I remember the case, this was the Altoids container that was in the pocket for the driver's door.
>
> . . . .

> And I know the officer—if I remember, there was, like, a metallic sound as opposed to what would be the sound of what the officer was familiar with [*sic*] Altoids. But, I mean, it could have been loose change. It could have been anything.

The trial court ruled that evidence recovered from the Altoids tin was admissible under two exceptions to the Fourth Amendment warrant requirement.

In explaining its ruling, the trial court reasoned that the search incident to arrest exception applied because Baker had been a "recent occupant" of the driver's seat next to the driver's side door, which was where Hudgens had found the Altoids tin. The trial court also held that the inevitable discovery exception applied because Benton, the registered owner of the car, consented to Hudgens's search of the Altoids tin, which meant that the eventual discovery of the illegal drugs in the Altoids tin was inevitable. The trial court implied in its ruling that its findings on consent and inevitable discovery may have been different had consent been procured from Baker, the driver, as opposed to Benton, the owner and passenger:

> [T]he passenger gave consent, and I know the consent cases that were argued were . . . you know, can you really give consent if a person is not of free will. But those cases involved whether the defendant could give consent afterwards, where this was the passenger who owned the automobile gave consent. So by giving consent, there would have been inevitable discovery.

Baker subsequently entered conditional guilty pleas to both felony possession charges, acknowledging that she was on probation at the time of the traffic stop. The trial court sentenced Baker to ten (10) years of imprisonment with all but six (6) months of the sentence suspended.

Baker alleges on appeal that the trial court erred in denying her motion to suppress because Hudgens lacked probable cause to search the vehicle and neither the search incident to unlawful arrest exception nor the inevitable discovery exception apply. In this case, we agree and therefore reverse and remand this case for further proceedings consistent with this opinion.

- 4 -

## II. STANDARD OF REVIEW

"In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168 (2008). To prevail, the accused must "show that the trial court committed reversible error." Id. In conducting our review, we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence"; however, we review "the trial court's application of the law de novo." Id. at 168-69.

## III. ANALYSIS

Under the Fourth Amendment, the government may not subject an individual to an unreasonable search. U.S. Const. amend. IV. A search conducted without a warrant is presumptively unreasonable unless the prosecution can prove that an exception to the warrant requirement applied. See Abell v. Commonwealth, 221 Va. 607, 612 (1980) (emphasizing that warrantless searches are "per se unreasonable, subject to a few well-defined exceptions"). Because Hudgens did not obtain a warrant to search the Altoids tin, his search of that container is presumptively unreasonable unless an exception to the warrant requirement applies.

### A. Probable Cause and the Automobile Exception

On appeal, the Commonwealth contends that Hudgens had probable cause to search the Altoids tin under the automobile exception and urges this Court to revisit the trial court's probable cause determination pursuant to the "right-result different-reason" doctrine.

The "automobile exception" provides one way for an officer to search a vehicle without first obtaining a warrant authorizing the search. Maryland v. Dyson, 527 U.S. 465, 466-67 (1999). This exception applies when an officer has probable cause to believe that a vehicle contains evidence of criminal activity. Id.

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Curley v. Commonwealth, 295 Va. 616, 622 (2018) (quoting Jones v. Commonwealth, 277 Va. 171, 178 (2009)). However, the Supreme Court of Virginia has repeatedly held that probable cause cannot be established "solely on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes." Cauls v. Commonwealth, 55 Va. App. 90, 100 (2009) (quoting Grandison v. Commonwealth, 274 Va. 316, 321 (2007)). Even when such an item is in plain view, its "incriminating character" must be "immediately apparent" to justify a search and seizure of the item. Id. (quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)).

Here, the trial court correctly found that Hudgens had no probable cause to search the Altoids tin. Although Hudgens testified that he observed Baker making movements toward the center console and toward the door compartment where the Altoids tin was located, an Altoids tin is an item that can be used for legitimate purposes. Hudgens testified that he retrieved the Altoids tin from the driver's side door compartment because, based on his experience, Altoids tins can be used as heroin kits; however, no evidence indicates that it was immediately apparent as a heroin kit. Even though Hudgens testified to "hear[ing] like a metallic rattling inside the door" and testified to his experience in recovering Altoids tins used as drug kits, probable cause does not follow from that when the container could have plausibly held legitimate items. As the trial court noted, "[i]t could have [held] anything," such as "loose change."

Indeed, the evidence shows that the incriminating nature of the Altoids tin was not revealed until after Hudgens seized the container from the door compartment, opened it, and searched its contents with a flashlight. Only after Hudgens followed that series of steps did he determine that the Altoids tin possibly contained heroin. We, therefore, find that the trial court

- 6 -

did not err in ruling that Hudgens had no probable cause to search the Altoids tin. Neither the automobile nor plain view exceptions justified Hudgens's seizure and search of the Altoids tin.

### B. The Search Incident to Arrest Exception

The search incident to arrest exception to the Fourth Amendment search warrant requirement could also obviate the need for police to secure a warrant before searching a vehicle. Arizona v. Gant, 556 U.S. 332, 346 (2009). In fact, the trial court ruled in this case that the search of the Altoids tin was lawful under this exception.

Baker, however, challenges that ruling and argues that the search incident to arrest exception in Gant did not authorize Hudgens's warrantless search of the Altoids tin. In Gant, the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at 351. Baker specifically argues that the officer safety prong of the Gant test was not satisfied when Hudgens searched the Altoids tin because she had been removed from the vehicle and placed in restraints before the search. Baker also argues that the evidentiary prong of the Gant test was not satisfied because the search of the Altoids tin was not related to evidence of the crime for which she was arrested, namely a probation violation related to a prior larceny.

The trial court's ruling that the search of the Altoids tin was a lawful search incident to arrest was erroneous under Gant. It is undisputed that when Hudgens searched the Altoids tin, he had already removed Baker from the vehicle, handcuffed her with her hands behind her back, and escorted her away from the vehicle's passenger compartment. Baker was therefore not "within reaching distance of the passenger compartment at the time of the search." Id. Moreover, Hudgens did not testify that he was concerned for his safety. Thus, the need for officer safety—as reflected in the first prong of the Gant test—did not apply.

Similarly, the need to preserve evidence of the offense of arrest—as reflected in the second prong of the <u>Gant</u> test—did not apply.  Hudgens testified that he searched the Altoids tin only because, in his experience, such items could be used to store drugs.  Hudgens never testified that he believed that the vehicle contained evidence of the offense of arrest—here, a probation violation.  Hudgens testified only that he heard a "metallic rattling," saw the Altoids tin, and then searched the vehicle.  Because the facts in this case are wholly insufficient to invoke the search incident to arrest exception to the warrant requirement, Hudgens's warrantless search of the Altoids tin was impermissible under <u>Gant</u>.  On appeal, the Commonwealth correctly abandoned this justification for the search.

## C.  The Inevitable Discovery Exception

Resolving Baker's final challenge turns upon whether discovery of the contraband was inevitable when Benton, the owner of the vehicle, consented to Hudgens's request to search where the Altoids tin was found.  Because Benton's consent was procured only *after* the illegal search of the Altoids tin and *after* Hudgens confronted Benton with the tin's illegal contents, Baker assigns error to the trial court's ruling that the Altoids tin would have inevitably been discovered.  We agree with Baker; Benton's consent did not cure the preceding illegal search.

Evidence recovered from an illegal search is "subject to the exclusionary rule, which prohibits the introduction of evidence, tangible or testimonial, acquired during an unlawful search."  <u>Carlson v. Commonwealth</u>, 69 Va. App. 749, 758 (2019).  The "[e]xclusion of evidence is a last resort rather than the first impulse," and is only justifiable when the exclusion would "deter police misconduct."  <u>Id.</u> at 759.

Determining whether evidence should be excluded turns upon whether the discovery of the evidence was "come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  <u>Id.</u> (quoting <u>Commonwealth v.</u>

Ealy, 12 Va. App. 744, 755 (1991)). "Evidence is sufficiently distinguishable from the initial illegality" if an independent source existed or, relatedly, the evidence would have been inevitably "gained without the unlawful action." Id. Alternatively, the taint of the initial illegality is purged when "the connection between the evidence and the illegality" is sufficiently attenuated. Id.; Kyer v. Commonwealth, 45 Va. App. 473, 483 (2005) (*en banc*) (explaining the case-specific nature of attenuation, but noting that courts consider factors like the "amount of time between the illegal action and the acquisition of the evidence, the presence of intervening circumstances like consent, and the purpose and flagrancy of the official misconduct"); see also Brown v. Illinois, 422 U.S. 590, 599 (1975) (finding that voluntary consent may be an intervening circumstance, but that it must be "sufficiently an act of free will" to purge the taint of an illegal entry).

Here, the purported attenuation was Benton's consent. Thus, we must determine whether her consent was the product of her "free will," and therefore sufficient to purge the taint of the illegal search, or whether the consent itself "was obtained as a product of the illegal search." Wood v. Commonwealth, 27 Va. App. 21, 30 (1998) (*en banc*).

In this case, as in Wood, we conclude that "[t]he circumstances surrounding" the initial search of the vehicle and the later request for Benton's consent to search "manifestly demonstrate" that her consent was "'come at by exploitation of [the initial] illegality' rather than 'by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 31 (quoting Ealy, 12 Va. App. at 757).

Significantly, the search preceded the consent; Benton watched as Hudgens searched both the vehicle and the Altoids tin. Hudgens subsequently confronted Benton with the contents of the tin and the accusation that it contained contraband. Only after discovering the incriminating evidence did Hudgens belatedly seek Benton's consent. That belated request came too late. No

- 9 -

intervening circumstances existed aside from consent, and Benton was not advised that she could refuse consent. Finally, no time had passed between the illegal search and the acquisition of the evidence. Based on this record, we find that Benton's consent was procured through exploitation of the initial illegal search, not by means sufficiently distinguishable from the illegal search to purge the taint. Because Benton's consent was tainted, we find that the inevitable discovery exception does not apply.

## D.  Remedy

Although excluding evidence is a "last resort," this remedy is proper when evidence is the fruit of an illegal search and suppression will yield "appreciable deterrence" of police misconduct.  Herring v. United States, 555 U.S. 135, 140-41 (2009).  In this matter, excluding the Altoids tin is proper because Hudgens plainly violated the Fourth Amendment by searching the tin without probable cause and suppression will likely deter such conduct in the future.

## IV.  CONCLUSION

For these reasons, we reverse the decision of the trial court and remand the matter for further proceedings not inconsistent with this opinion.

Reversed and remanded.