COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Beales and Huff
Argued by videoconference

TIMOTHY CORNELIUS WINFIELD

                                    MEMORANDUM OPINION* BY
v.      Record No. 0626-20-2          JUDGE RANDOLPH A. BEALES
                                      FEBRUARY 16, 2021

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Joseph M. Teefey, Jr., Judge

Steven P. Hanna for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Appellant Timothy Cornelius Winfield was charged with robbing two convenience stores

in Dinwiddie County within five hours of one another during the evening of March 25, 2019, and

the early morning hours shortly after midnight on March 26, 2019.  On March 4, 2020, the

Circuit Court of Dinwiddie County found Winfield guilty of two counts of robbery under Code

§ 18.2-58.  On appeal, Winfield argues that "[t]he trial court erred in finding the evidence

sufficient to find the defendant guilty of both counts of robbery given the fact that the

defendant's mere presence at both scenes plus a reasonable hypothesis of innocence dictates that

the circumstantial case against him should have been dismissed."

## I. BACKGROUND

"When the sufficiency of the evidence is challenged on appeal, we review the evidence in

the light most favorable to the prevailing party at trial, in this case the Commonwealth, and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accord to it all inferences fairly drawn from the evidence." Grimes v. Commonwealth, 288 Va. 314, 318 (2014) (citing Viney v. Commonwealth, 269 Va. 296, 299 (2005)). The evidence at trial established that at around 8:00 p.m. on March 25, 2019, at the Valero Fast Mart on Airport Street in Dinwiddie County, Rella Bailey brought a soda can from the cooler up to the register, asked for two packs of cigarettes, and told the cashier, Diane Andrews, "Don't panic. Don't cry. I have a gun. Give me all of your money." Although Andrews never saw a gun, Andrews gave Bailey $189 from the cash register and hit the store's panic button. Andrews observed Bailey leave the store with the money in her hand and enter the passenger's side of the vehicle driven by Winfield, which was located at one of the gasoline pumps farthest away from the store.

A few hours later, shortly after midnight on March 26, 2019, at the Cox Road Slip In convenience store in Dinwiddie County, Bailey brought a drink up to the counter and told the cashier, Tessa Lambert, "I have a gun in my pocket. And if you give me all your money, I will not shoot you." Lambert complied and gave Bailey $168.55 from the cash register. Bailey also took Alka-Seltzer, NyQuil, a pack of cigarettes, and a watermelon lemon tea. Lambert testified that Bailey had the money in her hand as she went out the door. Lambert further testified that two other customers in the store pursued Bailey on foot, but they returned to the store to wait for the police. Lambert stated that she was told by the two customers that Bailey entered the passenger's seat of a car that "was basically rolling before she got in it." The customers also provided Lambert with the car's license plate number.

Corporal Brian Travis responded to the Valero Fast Mart robbery.[1] He watched the surveillance video with the manager of the store and testified to its contents at Winfield's trial. Corporal Travis testified that the video showed a vehicle arrive and stop at one of the gasoline

_____

[1] Winfield, when describing Bailey's actions at both the Valero Fast Mart and the Cox Road Slip In, concedes in his brief that "[t]here is no question that Ms. Bailey robbed the clerks at both establishments."

pumps farthest from the store. He testified that Bailey exited the passenger's side of the car, entered the store, and stuffed the stolen items into "the pocket of her shirt of her . . . hoodie." He also observed that Bailey stole a cigarette lighter. Corporal Travis testified that Bailey left the store, but he could not tell if the stolen money was in her hand due to the grainy picture quality of the video. Corporal Travis stated that the video showed that the car never moved while Bailey was in the store, that the driver never got out of the car to pump any gas, and that the car immediately left when Bailey returned and entered the passenger's door of the vehicle.

Meanwhile, Deputy Herlong responded to the Cox Road Slip In robbery. Deputy Herlong watched the store's surveillance video. He testified that, in the videos, a vehicle pulled up next to the store, and Bailey exited the car. Deputy Herlong testified that he saw "[a] black male was driving the black vehicle with a Virginia license plate . . . ." He testified that Bailey left the store and walked in an ordinary manner toward the car in the parking lot and that the car idled for approximately fifteen seconds before leaving the scene. Deputy Herlong also received the car's license plate number from the cashier, Tessa Lambert.

Investigator Droddy also responded to the robberies at the Valero Fast Mart and the Cox Road Slip In. He reviewed the surveillance videos from both locations onsite and again later at his office. While watching the Valero Fast Mart surveillance video, Investigator Droddy initially determined that the driver of the vehicle was wearing a shirt with red sleeves and had "something protruding from the back of the head." Furthermore, Investigator Droddy testified that "the money was sticking out of the top of her hands almost as if it was a dozen of roses" as Bailey "sprinted out of the store" toward the car "as she ran almost holding it as a torch." Investigator Droddy noticed that, due to the car's position, Bailey had to walk right in front of the car – within less than two feet of the hood – in order to enter the passenger's side of the vehicle. Investigator Droddy further stated, "And when it [the vehicle] turned to exit, I could actually see

the lights of the – the tail lights of the car and the suspension moving, because it was traveling at a higher rate of speed than what would be normal."

Investigator Droddy continued his investigation by going to the Cox Road Slip In. At that location, Deputy Herlong gave Investigator Droddy the license plate number of the suspected vehicle. After watching the surveillance video at that location, Investigator Droddy confirmed that "the driver of this vehicle was a black male" wearing distinctly red sleeves and what appeared to be a hat, which was "100 percent consistent with the video from the Valero." Investigator Droddy testified that, like at the Valero Fast Mart, the surveillance video showed Bailey sprinting again from the Cox Road Slip In store to the car with a plastic bag filled with the stolen goods and money. He stated:

> Before she got to the passenger side, I seen the car starting to move already. She -- it just barely moved, but you could tell that the car was now no longer in park . . . . She got into the passenger side of the vehicle. The vehicle backed up. Again that is centrifugal force being seen in the car bouncing backwards and forwards as it was moving. And it left out of the parking lot quicker than when it came in.

After running the license plate number, Investigator Droddy discovered that Winfield owned the vehicle. Investigator Droddy went to Winfield's house in Petersburg, but he was unable to locate Winfield or the vehicle at that address. Investigator Droddy then drove around to other convenience stores in the area to provide them with photos of the suspected car and Bailey. While walking to his car after visiting an Exxon Thrift Mart on Boydton Plank Road, Investigator Droddy, who was driving an unmarked police vehicle and wearing civilian clothing, saw Bailey approach the store. He recognized her by her physical characteristics and her clothing, which he had seen her wearing on the surveillance videos of the two stores that were robbed a few hours earlier. He also observed Winfield sitting in the passenger's seat of the car, wearing the same clothing he had observed in the surveillance videos. Investigator Droddy

- 4 -

testified that he pulled out his gun, that he ordered Bailey to get on the ground, and that he told Winfield to get out of the car. As soon as additional police arrived, Bailey was arrested for the two robberies, and Winfield was arrested for outstanding warrants against him in another jurisdiction.

Lieutenant Gunn of the Dinwiddie Sheriff's Office interviewed Winfield, who told him that Bailey asked him to stop at the Valero Fast Mart to "get a couple of things." Winfield stated that "he stayed in the car the whole time." Lieutenant Gunn stated that Winfield told him that he went to a house in Petersburg, dropped off Bailey, went to get food, picked her up again, and then went to the Exxon Thrift Mart. Lieutenant Gunn testified that, after he pressed Winfield, Winfield said that he recalled going to the Cox Road Slip In where Bailey "went inside the business and came back with a bag full of stuff." Winfield told Lieutenant Gunn that he allowed Bailey to drive the car to the Exxon Thrift Mart because "she was getting high in the city of Petersburg and that he didn't want her to drive the car by herself and that is why he rode in the passenger seat this time." Winfield told Gunn that "he didn't receive anything from her."

The Commonwealth charged Winfield with two counts of robbery under Code § 18.2-58. At trial, Winfield's counsel argued that his mere presence at both scenes failed to demonstrate that he was an active participant in the robberies. Winfield himself testified that he was with Bailey at a friend's house when Bailey told him that she wanted to buy cigarettes with money from her card. Winfield testified that he pulled up to a pump that "was like right there by the door" and that she went in the store while he said that he was "messing with my phone." Winfield testified that Bailey walked and did not run from the store. He stated that, when she walked in front of the car as she returned to the passenger's side of the car, he only noticed her having cigarettes and a soda. Winfield testified that he then drove to a house located on Ferndale Avenue, dropped Bailey off, went to get food and talk to someone about acquiring a job as a

painter, returned to the house, and fell asleep. Winfield testified that Bailey awakened him and asked him to take her to the store because "[s]he wanted to get a soda." He stated that, while waiting at the Cox Road Slip In, he turned off the car, started "messing with the phone" again, and saw Bailey return with a bag in her hand. Winfield then testified, "I cut the car on. I backed out, pulled off. Went back to Ferndale." He stated, "The whole time I thought she had money on the card. I ain't never see her with no money or nothing." Winfield described how, after they returned to the Ferndale address, he asked Bailey to drive him to McDonald's to get some food. Winfield testified that, while driving to McDonald's, Bailey decided to make a brief stop at the Exxon Thrift Mart, where they were placed under arrest.

The trial court found Winfield guilty on both counts of robbery. When pronouncing its ruling from the bench, the trial court made the following findings regarding the robbery at the Valero Fast Mart:

> The detective said that in his testimony that she ran from the store which is an indication that we are talking about some urgency which there did not appear to be any urgency in any of this. And that in running from the store towards the car that she was clutching in her left-hand a number of bills that were clearly visible on the video and that she had items in the other hand or in her arm. And that in that time that she got in the car. The car exited faster than it entered. And that the exit was such that it caused the vehicle to lift in a way that was indicative of taking hard fast turns.

The trial court also made findings regarding the Cox Road Slip In robbery, stating:

> And the Court then heard that at a different location, again a car parked not immediately in front of the store doors, but off to the left as you face towards the store the description nosed into the parking space. She again runs from the store. Comes to the car and that the car was actually engaged and starting to move backwards at the time that she arrived at the door in order to get into the car. And that the car had jerking motions in backing up quickly causing the rear end to press down towards the ground. And then the car was then engaged in a forward motion after it

- 6 -

backed out of that spot such that the front end began to sink down
as it accelerated out of the area.

In finding Winfield guilty, the trial court concluded that these actions were "all indicative of a person who knew what was going to happen and a person who knew how to exit with the primary actor in the robbery in a quick manner and to make a quick escape from each of these two locations." Winfield appealed his convictions to this Court.

II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

The General Assembly mandates that "[i]f any person commit robbery . . . by the threat or presenting of firearms . . . he shall be guilty of a felony." Code § 18.2-58. Winfield was convicted of robbery based on his role as a principal in the second degree. See Code § 18.2-18 ("In the case of every felony, every principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . ."). "A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or

- 7 -

keeping watch or guard at some convenient distance." Rollston v. Commonwealth, 11 Va. App. 535, 539 (1991) (quoting Brown v. Commonwealth, 130 Va. 733, 736 (1921)). "The law is settled that mere presence is not sufficient to establish that one is a principal in the second degree, an aider and abettor to the commission of a crime." Hall v. Commonwealth, 225 Va. 533, 536 (1983). In order to prove that Winfield acted as a principal in the second degree, the Commonwealth was required to "prove that the accused did or said something showing his consent to the felonious purpose and his contribution to its execution." Id. (citing Jones v. Commonwealth, 208 Va. 370, 373 (1967)). "It must be shown that the defendant procured, encouraged, countenanced, or approved commission of the crime." Rollston, 11 Va. App. at 539 (quoting Augustine v. Commonwealth, 226 Va. 120, 124 (1983)).

In his sole assignment of error, Winfield argues that "[t]he trial court erred in finding the evidence sufficient to find the defendant guilty of both counts of robbery given the fact that the defendant's mere presence at both scenes plus a reasonable hypothesis of innocence dictates that the circumstantial case against him should have been dismissed." Winfield concedes that Bailey robbed both the Valero Fast Mart and the Cox Road Slip In and that he drove Bailey to both locations at the time of the robberies. However, he argues that he only gave Bailey a ride to the locations at her request and that he had no knowledge of Bailey's plans to commit the robberies at that time. He contends that his mere presence at both locations was insufficient to convict him of the robbery charges and that the Commonwealth "failed to show that Mr. Winfield procured, encouraged, countenanced, or approved commission of the crime by Ms. Bailey." Specifically, he contends that the evidence regarding the manner in which he drove away from each of the stores did not provide "any indicia of criminal activity" or any "indicia of flight."

On appeal, "[w]e are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." Malbrough v. Commonwealth, 275 Va. 163,

168 (2008). In its ruling from the bench, the trial court made extensive findings of fact regarding Winfield's involvement in both the robbery at the Valero Fast Mart and the robbery at the Cox Road Slip In. The trial judge found that Winfield's actions were "all indicative of a person who knew what was going to happen and a person who knew how to exit with the primary actor in the robbery in a quick manner and to make a quick escape from each of these two locations." These findings are supported by credible evidence in the record. With respect to the Valero Fast Mart robbery, the trial court made a finding of fact that "[t]he car exited faster than it entered. And that the exit was such that it caused the vehicle to lift in a way that was indicative of taking hard fast turns." Investigator Droddy testified that he observed "the tail lights of the car and the suspension moving, because it was traveling at a higher rate of speed than what would be normal." In addition, Corporal Travis testified that Winfield never left the vehicle the whole time it was parked at the gasoline pump at the Valero Fast Mart and that Winfield immediately drove the vehicle away when Bailey returned to the car. This testimony supports the conclusion that Winfield was waiting in the car for Bailey to return after she completed the robbery and that he assisted her in fleeing the scene.

Similarly, the testimony regarding Winfield's actions at the Cox Road Slip In indicates that Winfield knowingly assisted Bailey with escaping from the scene of the robbery by having the car prepared for a rapid exit. Investigator Droddy testified that Winfield had already shifted out of park and that the car was moving when Bailey entered the car,[2] and Lambert, the store's

---

[2] Winfield contends that Deputy Herlong's testimony demonstrates that Winfield did not leave the Cox Road Slip In in a manner indicative of flight. Deputy Herlong did testify that the vehicle did not depart until fifteen seconds after Bailey returned. However, the trial court found Investigator Droddy's testimony, which described an immediate flight from the scene, to be more credible because, unlike the other officers, Investigator Droddy had the opportunity to review the surveillance videos extensively both at the stores and later at his office, and we are bound by that finding of credibility by the trial judge as the factfinder. See Schneider v. Commonwealth, 230 Va. 379, 382 (1985) ("[T]he credibility of witnesses and the weight

- 9 -

cashier, testified that her customers who followed Bailey also told her that the car "was basically rolling before she got in it." This testimony supports the trial court's finding of fact that:

> She again runs from the store. Comes to the car and that the car was actually engaged and starting to move backwards at the time that she arrived at the door in order to get into the car. And that the car had jerking motions in backing up quickly causing the rear end to press down towards the ground. And then the car was then engaged in a forward motion after it backed out of that spot such that the front end began to sink down as it accelerated out of the area.

Winfield maintains that the circumstantial evidence in this case fails to exclude the hypothesis of innocence that Winfield did not know Bailey intended to rob the stores. Winfield testified that he never saw Bailey with money, that he thought she made purchases with her card, and that he did not receive anything from her. Despite Winfield's denial of wrongdoing, the trial court, as noted above, found that Winfield drove away from both stores as though he "knew how to exit with the primary actor in the robbery in a quick manner." The trial court also did not find his testimony credible and consequently rejected it. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998).

Furthermore, in addition to the speed and manner in which Winfield left the stores, other evidence supports the trial court's ultimate conclusion that Winfield "procured, encouraged, countenanced, or approved" of Bailey's robbing the stores. See Rollston, 11 Va. App. at 539. Investigator Droddy testified that Bailey ran from the Valero Fast Mart with the cash in her hand as if it were a torch or "as if it was a dozen of roses sticking out of the top [of] her hand," and that she crossed no farther away than two feet in front of the vehicle as she was running back to

accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.").

- 10 -

get in it. The trial judge, acting as factfinder, certainly could have concluded that Winfield observed Bailey holding the stolen money as she crossed closely in front of him before they sped off together. In addition, the evidence showed that, despite parking at one of the gas pumps located the farthest away from the store at the Valero Fast Mart, Winfield never left the car to pump gas, suggesting that he parked in that spot to be poised for a quick exit. Finally, the similarities between the two robberies – committed just hours apart – show a pattern and a *modus operandi* indicative of Winfield's active participation. Consequently, we cannot say that no rational factfinder could have found Winfield guilty as a principal in the second degree of two counts of robbery.

### III. Conclusion

In short, the record establishes that both the Valero Fast Mart and the Cox Road Slip In located in Dinwiddie County were robbed within five hours of each other and in a very similar manner. Winfield first drove Rella Bailey to the Valero Fast Mart and parked at one of the gas pumps farthest away from the store. While Winfield remained in the car and never pumped any gas, Bailey entered the store, robbed it, and fled to the car with the stolen money and items in her hand. Investigator Droddy studied the store's videotape and testified that, as soon as Bailey entered the car, the vehicle immediately left at "a higher rate of speed than what would be normal." Hours later, Winfield drove Bailey to the Cox Road Slip In and waited in the car while Bailey entered the store and robbed it. After Bailey sprinted away from the store, the cashier at the Cox Road Slip In testified that her customers who followed Bailey said that the vehicle "was basically rolling before she got in it." Investigator Droddy confirmed that the car was no longer in park and appeared to be moving as Bailey entered. He also testified that Winfield drove the vehicle away from that "parking lot quicker than when it came in." Despite Winfield's claim that he did not know of Bailey's intent to rob, the way Winfield pulled in to the Valero Fast Mart

- 11 -

and the way Winfield quickly pulled out at both locations, as the factfinder found, shows that Winfield knew what Bailey was doing and had just done. All of these factors help lead to the factfinder's conclusion that Winfield's actions were "all indicative of a person who knew what was going to happen and a person who knew how to exit with the primary actor in the robbery in a quick manner and to make a quick escape from each of these two locations." They also show a pattern and a *modus operandi* so that we certainly cannot say that no rational factfinder could find Winfield guilty as a principal in the second degree, given his role as the get-away driver in the two robberies. For all of these reasons, we affirm Winfield's two robbery convictions.

<u>Affirmed.</u>